We'll hear argument next this morning in Case 13-435, Omnicare, Inc. v. Laborers Dist. Council Constr. Industry Pension Fund. Mr. Shanmugam. Thank you, Mr. Chief Justice, and may it please the Court. Like other provisions of the Federal Securities Laws, Section 11 of the Securities Act imposes liability only for untrue or misleading statements of material fact. The only fact conveyed by a statement of opinion or belief is the fact that the speaker held the stated belief. As this Court concluded in Virginia Bank Shares v. Sandberg, a statement of opinion or belief can therefore be actionable only if the speaker did not actually hold the stated belief. In the decision under review, the Sixth Circuit, alone among the courts of appeals, concluded that this Court's reasoning in Virginia Bank Shares did not apply to a claim under Section 11, even though Section 11 contains a materially identical falsity requirement to the provision at issue there. Neither the Sixth Circuit's interpretation, nor those of Respondents or the government, can be reconciled either with the plain language of Section 11 or with this Court's decision in Virginia Bank Shares. So if I say, or the company says in a prospectus, we believe that we have 3.5 million units of inventory in our secret inventory warehouse, so long as they say we believe, they can't, you know, it turns out they have none, that's all right, they're still protected? I think that that would probably be a statement of opinion, but it is much closer to the line between statements of opinion and statements of fact. Really, you think it's an open question if they say it's a very precise number for something that only they know anything about, and it's wildly off? You think they're protected, or maybe, simply by saying we believe? Well, I think that the reason why I think it's a close question as to whether or not that would be a statement of opinion is simply because the second restatement's definition of what constitutes a statement of opinion, which we think is a useful guide, includes not just statements on matters of judgment, like the statements we have at issue here, but also statements that express uncertainty about factual matters. And I think in your hypothetical, Mr. Chief Justice, you could view that statement as being the equivalent of a factual statement that, along the lines of we have approximately 3 million units or widgets in our inventory, such that if they had nowhere near that, that statement would be an objectively false statement of fact. But suppose it is actually disputed, an expert, expert, a museum expert on archeological mission, says it is my opinion that those bones in that mountain are of a Diplodocus and not a Tricepterus. Now, wouldn't you have thought that at least he'd looked into it, that at least he'd seen the bones? You see, it's absolutely open. It is a matter of opinion, but there's some things implied. If you'd learned later he'd been in a bar all night and had never even seen or heard one word about what the bones were like, wouldn't you think he had issued a misrepresentation? So, Justice Breyer, first, that would clearly be a statement of opinion because it's a statement on a matter of judgment. Yes. Our view is that where the speaker does not say anything about the basis for its opinion, the only fact that is being conveyed is the fact that the speaker's belief. Yes. And I just produced an example, because I knew that was your view, and what I would look for was an example where your view doesn't seem quite so reasonable. And that was why I said it doesn't seem reasonable there, because I think any listener would think that the archaeologist had not been spending all night in the bar, but rather had at least looked at the bones or done some basic examination. Now, that's the point I want you to address yourself to. Why is that statement I just made wrong? It is my opinion it is right. So notwithstanding the fact that, in our view, Justice Breyer, there is no implied statement of fact, there may nevertheless be a claim, and that is for the simple reason that there is a claim. And the reason that there is no implied statement is that he's done some work to figure this out. Well, and I think that we may end up ultimately getting to the same place, because let me explain how we think the analysis would work in that situation. In a situation like that, we believe that the ultimate legal inquiry is whether the speaker did not possess the stated belief. But a plaintiff would be able to come forward with allegations in your hypothetical that the archaeologist spent the evening in the bar, that the archaeologist had no basis for his or her opinion. And in that circumstance, that would be circumstantial evidence that the speaker, in fact, did not possess the stated belief that the bones were those of a Diplodocus. So you're saying that this evidence, what we're talking about, the evidence that the speaker didn't believe what he said, that could be proved by showing he made no investigation at all.   And I'm not sure that whether there was any investigation or whether it was reasonable will factor into whether the belief was honestly held. Yes, that is correct. But why we're dealing with a registration statement, why isn't it, as Justice Breyer suggested, implicit that when somebody, when an issuer puts something in a registration statement, that the issuer has acted with diligence in making that statement? Well, we don't believe that there is any necessary implication from the statement. And we think that that is true regardless of whether or not it appears in a registration statement, because after all, in Section 11, while Congress certainly imposed a heightened obligation on issuers and did so by relaxing other elements of liability, Congress included exactly the same falsity element as it did in a variety of other provisions of the Federal Securities Laws. But again, our view is that for purposes of pleading a claim, a plaintiff is not restricted to smoking gun evidence that the speaker did not possess the stated belief. And so, again, if a plaintiff is able to come forward with allegations that cross the pleading threshold of plausibility to suggest that the speaker, in fact, did not withhold the stated belief, that will, in fact, be sufficient. Well, that may be true, but do you deny the fact that there can be situations in which a person makes a statement of belief and believes that to be true, but lacks a reasonable basis for stating the belief? There is a difference between those two situations, isn't there? I think there is a difference between those two situations. And I think this illustrates an important conceptual distinction. I think in a case where a speaker has no basis whatsoever for the stated belief, there will be comparatively few cases, and I'm certainly not aware of any case from the reported cases in this area, where the speaker held the stated belief but lacked any basis for it whatsoever. However, I think that the government's reasonable basis standard, the position of the Solicitor General here, suggests, I think, something more. And quite frankly, it's not entirely clear how much more that position would require. It seems to focus on how the speaker actually arrived at its opinion, and that suggests that the focus may be on the diligence that the speaker conducts. But our view is that once you start getting into a lack of a reasonable belief, you're really getting into a matter of opinion. And I really do think that however the government's test operates in practice, and, again, I think the government's brief provides that. Sotomayor What's wrong with that? There's an assumption that there's something wrong with that. But if what one wants is honesty in security statements of any kind, wouldn't one want boards, issuers, others, to have some sort of reasonable basis? I'm borrowing the government's words. Before it goes about making predictive, even predictive statements. So two points in response to that, Justice Sotomayor. First of all, at the risk of being glib, we simply don't think that that is the statute that Congress enacted. And certainly, if Congress had wanted to impose an obligation on issuers of essentially providing an implied warranty for any statement of opinion that issuers make in their registration statements, it could have done so. And there are other statutes that impose liability where there is an absence of a reasonable basis. Let me explain why it's problematic as a matter of policy. We believe that a reasonable basis standard, that is to say, a standard that goes further than the standard that I think Justice Breyer was suggesting, that goes beyond simply saying that you have to have some basis, but that looks at the reasonableness of the basis, opens up issuers to after-the-fact second-guessing on matters of actual basis. Scalia A factual basis. Shanmugam I'm sorry? Scalia Factual basis. There has to be a factual basis for making them. Shanmugam Well, again, I think there's a meaningful difference. And I think in your hypothetical. Breyer You know, I mean, why wouldn't that work as a standard? You're worried about the standard. Reasonableness is too open to speculation. Okay. What about just saying there has to be a factual basis for it? Shanmugam Well, as a practical matter, I think that where you have no factual basis whatsoever and where a plaintiff is able to so allege, that will be sufficient to allow the plaintiff to go forward, even under our legal standards. Breyer The person did have the opinion about the Diplodocus. It was his opinion. He's an archaeologist. He, you know, looks around, sees the sky, the mountains. There's some basis. People all the time say it's my opinion. Really, they haven't looked into it and so forth. It's a registration statement. You ought to have looked into it. Shanmugam And as I indicated earlier, Justice Breyer, I'm really not aware of any cases that involve that precise fact pattern. Breyer I'm sure there are none involving the Diplodocus. Shanmugam Or any other case where the speaker has no factual basis. Breyer Well, don't say no. Shanmugam A statement. Breyer Don't say no. You leave it up to the judge or the judge, depending on the fact finder, to say is there a factual basis. And just as opinion is something that depends on context, whether something is an opinion, so factual basis in support will have to, to some extent, depend on context. Shanmugam And as a practical matter, Justice Breyer, I really do think that our legal standard takes care of that situation, because in a situation where the plaintiff is able to make that allegation, and I would note parenthetically that the plaintiffs certainly haven't made that allegation here, it would likely be sufficient to surmount the pleading for assault. Sotomayor Do you think there's a difference between a factual basis and a reasonable factual basis? I mean, if we adopted a factual basis rule, would we accept an unreasonable factual basis? Shanmugam Well, I think that really depends on what the reasonable basis is. Sotomayor I mean, I think it's just the same rule in disguise, really. Shanmugam Well, I think that in the context of legal compliance, of statements of the sort that we have at issue here, I think that that context in many ways illustrates the potential difference. So suppose you had an issuer who had two separate legal opinions, one suggesting that a particular practice was legal and the other one was not. Certainly there, I think you would say that the issuer has at least some basis. But it may be open to after-the-fact determination as to whether or not that was a reasonable basis in light of the fact that there was a competing opinion. Again, it's entirely unclear exactly what that standard means. I think in part because it's a novel standard. Breyer I think Justice Scalia is right there. And there would be something like that. But so your point is a good point, that it isn't so easy to figure this out exactly what the standard is. The alternative, of course, is to issue registration statements that have statements in them of opinion which are very detailed, very fact-based, and where people would think some work was being done. And in fact, far less work has been done than anybody would think was plausible. And they just float right by without a tack. Now, isn't the law designed to catch those things? Well, I would say this, Justice Breyer. I mean, again, the statute itself does not contain any reasonable basis requirement, and nothing in this Court's decision in Virginia Bank Shares, in our view, suggests such a requirement. So we really don't think that there is any support. Ginsburg How do you say that about Bank Shares, which contains the statement that the government refers to? Conclusive opinions in a commercial context are reasonably understood to rest on a factual basis that justifies them as accurate. Yes. And, Justice Ginsburg, that's a statement at page 1093 of the Court's opinion in Virginia Bank Shares. And we think that in context, that statement stands for the proposition that I've been articulating this morning, namely that where a speaker makes a statement of opinion and has no basis for that statement, that may be relevant in showing disbelief. That may be relevant in showing what the Court went on to say was legally required, namely both subjective disbelief and objective falsity. And before the Sixth Circuit's opinion in this case, that was the consistent understanding of lower courts in construing this Court's opinion in Virginia Bank Shares. And so we certainly think that Virginia Bank Shares does not stand for the proposition that an issuer, whenever an issuer makes a statement of opinion, somehow includes in that statement an implied warranty that the speaker has a reasonable basis for that statement. If we adopt your position, which I take it to be that lack of reasonable basis for a statement can be evidence that the belief was not sincerely held, in this case, do we still have to remand, or did I understand you to say that the plaintiffs below did not specifically allege that there was no reasonable basis on the basis of the statement? So two things on that point, Justice Kennedy. If you adopt our view that the legal standard here turns on subjective disbelief, which, again, we believe was the holding of this Court in Virginia Bank Shares, then the plaintiffs here are foreclosed because the plaintiffs disclaimed any allegation based on a state of mind, which is to say that the plaintiffs in this case, in an effort to exclude, to avoid being subject to the heightened pleading standard of Rule 9b, included. Ginsburg. And I thought that the complaint alleged that the defendants had no, no, that no defendant had a reasonable ground to believe that omnicare's arrangements were lawful. Yes. And that was going to be my second point, Justice Ginsburg. So just to be clear, there are two paragraphs of the complaint that we think are relevant here. The first is paragraph 178, which is the paragraph in which the plaintiffs disclaimed any allegation relying on fraud or intentional misconduct. And we think that under our legal standard, that forecloses plaintiffs in this case from going forward. I would note that plaintiffs don't really dispute that under our legal standard their claim is foreclosed. They make no effort in their brief to suggest that their claim could nevertheless go forward. Now, if this Court were to adopt the Solicitor General's legal standard and to say that the legal standard here is whether or not there was a reasonable basis for the opinion, this Court would obviously have to vacate and remand because that was not the legal standard that the Sixth Circuit applied. We think that we would have a very strong argument on remand that we should nevertheless prevail, because the plaintiffs in this case have pointed only to the conclusory allegation that you identify, Justice Ginsburg, and that is the allegation in paragraph 183 that says that none of the defendants had a reasonable ground to believe in the statements in the registration statement. If the inquiry in this case focuses on how the Speaker arrived at its opinion, this complaint is really threadbare in terms of allegations that relate to that issue. And so we've we've – but that would be an issue for the Sixth Circuit on remand. Alito, if the test is subjective, as you claim, with respect to the issuer, whose subjective state of mind should it – must the Court look at? Would it be solely the person who signs on behalf of the issuer, or would it be everyone else who is required by law to sign the registration statement? So I think that the inquiry would be much the same as the inquiry with regard to claims that have a scienter requirement, such as claims under Section 10b. And I would note that there is a little bit of disagreement in the lower courts about how broad the category of individuals at an issuer is whose state of mind is relevant. But the inquiry generally focuses on those who either made or approved the statement at issue. Kagan, suppose that in a particular registration statement there was a statement that said a particular kind of transaction was lawful, all right, and the person who makes that statement, whoever it is, really believes it. But, in fact, that person knows that the government is breathing down his neck, that the government seems to have a different view, that person knows that its competitors have a different view, and that person has also consulted three lawyers and two of them have given a different view. But he still believes what he believes. He believes that the Supreme Court is going to vindicate his legal position. But the only thing he says is, I think this is lawful. Now, why isn't that something where there is an omission that makes the statements misleading? So we don't think that there is an omission under that circumstance, because we think that the only fact that is being disclosed by the statement is the fact of the speaker's belief. And if you look at the relevant language on which Respondents and the government really focus, it is that language concerning omissions. It's not the language concerning falsity. And that language focuses time and time again on the fact at issue. So it refers to omissions, omission to state a material fact. And so what is omitted has to be a fact necessary to make the statements therein. And I think that's a reference back to statements of material fact. Kagan. Kagan. Well, it just says statements therein. It doesn't actually say statements of material fact or not. But I think that's most naturally a reference back to the language a couple of lines earlier about statements of material fact. And I think this all just underscores the fact that Congress, in this provision, did not impose a broad affirmative duty to speak, nor did it impose liability on untrue or misleading statements. Kagan. It didn't impose an obligation to speak, but once you speak, it said that you can't make omissions that make your statements misleading. And I guess what I'm saying is, you know, what I've given you is a case where this is a judgment call whether you think something is legal or not, but what you know and, after all, you're in the position to know and all your readers are not in a position to know, what you know is that the government seems to disagree, that your competitors seem to disagree, and that most of the lawyers seem to disagree. And still, you're going to put this in your statement and say, oh, no problem, that's not misleading. Well, and in your hypothetical, Justice Kagan, you know, I think it's – there is a fact that is being conveyed is the fact of the Speaker's belief, and that is what makes the statement material, which is to say that when you have statements of opinion in a registration statement, the reason that they are material is precisely because it is management's view on a particular question. And so when you have a statement of that variety, that is the fact that has to be shown to be either false or misleading. Obviously, if the Speaker does not possess the stated opinion, the statement is false. But we don't believe that a reasonable reader would look at that statement and say two things, actually, both, he's done something to try to check as to whether the transaction is legal, and he doesn't know anything that's very dispositive going the other way. And both of those things, I mean, could be false. I think where a Speaker says nothing about the basis for the opinion, there are obviously a spectrum of potential bases for the opinion that the Speaker could have. And so, again, we don't think that there is any necessary implication about the scope of the basis for the opinion. Now, again, if it's a case where the Speaker truly has no basis for the opinion, we believe it will be quite possible for a plaintiff to include all of these underlying allegations about the basis as a way of showing subjective disbelief. And so what that really leaves you with, we would respectfully submit, is the hypothetical situation in which a Speaker, in the face of overwhelming contrary evidence and no basis, nevertheless adheres to a genuine belief in the question of whether or not liability should lie in those circumstances. And our view is simply that it is not worth the candle to frame the legal standard in a way as to cover that entirely hypothetical situation, and in part, to get back to Justice Sotomayor's question from the beginning of the argument. That is because it is important to underscore the fact that this is a statute that imposes strict liability. And as this Court explained in Pinter v. Dahl, when it comes to statutes that impose strict liability, issuers really need to have certainty and predictability. And a legal standard that focuses on reasonable basis is going to open up issuers to, after the fact, second-guessing by jurors about whether or not a particular basis is reasonable. Kagan. But I would think, Mr. Shanmugam, that the fact that the statute has — is a strict liability statute might cut the other way, that why is it a strict liability statute? Because Congress had some understanding, number one, that it was the issuer who knows the facts, not the readers, and, number two, that it's awfully hard to show subjective intent. Shanmugam Well, Congress dealt with the context of registration statements precisely by relaxing the other elements of liability that, of course, exist under other provisions of the securities laws. And what that leaves us with is a statute where this falsity element is really the entire ballgame, because elements such as reliance and loss causation are no longer affirmative elements of liability. And, of course, what that means is not only that it is easier for plaintiffs ultimately to prove liability, but that it is also easier for plaintiffs to plead a claim under this provision. And I do think that a reasonable basis standard, depending on how that standard is framed, could make it very difficult for issuers to avoid liability at the pleading stage, and as, of course, this Court has recognized in the securities context, obtaining resolution of these claims on a dispositive motion is often, as a practical matter, the only way in which defendants can avoid liability because of the pressures of settlement in cases of this variety. Unless the Court has any further questions, I'll reserve the balance of my time. Roberts. Thank you, counsel. Mr. Goldstein. Mr. Chief Justice, may it please the Court. The difficult part of this case for the other side is that we all know that opinions and Virginia bank shares makes this point frequently imply facts. The difficult part of this case for our side, and it's important for me to confront the hard part of the case, is that sometimes opinions are just statements of belief. And what you have to figure out, I think, is, A, what is the default rule that you should be looking at a registration statement for, and, B, what is it that the issuer can do to make it clear, no, look, this is just our sense of the matter? They didn't write the registration statement in a bar one night. A registration statement is a very solemn document, and you know that from a variety of things. The first is, as Justice Kagan points out, it is a strict liability document. Unlike the great majority of the provisions of the securities laws, Congress said we don't have to prove scienter. Congress said that reliance doesn't matter. Congress said that causation is for the other side to prove. We know that when Congress wrote that statute, it had opinions in mind because Section 11 refers to opinions. There are audit opinions. And with respect to an audit opinion, the auditor has to prove that he or she engaged in due diligence. We know that it had forward-looking statements in mind, which are opinions, because it said that forward-looking statements that are subject to section that are subject to the exemption, it is the plaintiff that has to prove that they actually knew that the forward-looking statement was false. The Sixth Circuit held that once a false statement has been made, a defendant's knowledge is not relevant to a strict liability claim. Was that correct? It is true with respect to the factual representations that are expressed or implied. The Sixth Circuit was not confronting, I think, an important part of the case because the Petitioners had not made the argument, what do we do if the opinion is hedged? What do we do if instead of just a representation that here is our opinion which carries with it the implication about a certain set of facts, we instead say we are uncertain? And I think that's an important issue that isn't before you either. But with respect, it is a strict liability statute. If the factual representations that are expressed or implied are incorrect, then they are liable. And the reason for that is that this is not a securities fraud statute. Alitoso, if that's the holding of the Sixth Circuit, don't we, at a minimum, have an obligation to vacate and remand? Because they didn't hold that the reasonable basis standard was satisfied here. Well, Your Honor, the judge, as a purely technical matter, I think that's not correct. We don't – I don't particularly care what the last word in your opinion is. What the Sixth Circuit did is it remanded to the district court, if you refine the rule for applying the – for applying Section 11, I think what you do is affirm and correct what you regard as the misapprehension of the Sixth Circuit's rule. The same that they are wrong about this. They said that the Section 11 does not require a plaintiff to plead a defendant's And a statement of opinion is actionable when it is ultimately found to be false. Now, that I don't think is what you are arguing or what the SG is arguing. The point is that the statement – it is my opinion that the warehouse will hold up in a 93-mile-an-hour wind for 17 hours as long as the windows are closed. And there, that statement may be false, but it may also be true that the issuer, before issuing the statement, performed a variety of tests, in which case you would agree, I think, that it is not actionable. And so it isn't just that it's false, it's that there was no reasonable basis for holding it. Moreover, whether the issuer has a reasonable basis is a fact about the issuer's state of mind. It isn't whether there is a reasonable basis in the world. It is about whether those people who issued this statement had a reasonable basis for issuing it or not. I think that's about their state of mind in a sense, but those two things, I think, do require reversal. Well, Your Honor, first of all, you have described what the government has articulated as the rule, and that is the reasonable basis standard. We endorse that test. We have a still broader argument that we would win on even if you – that we would win the case even if you disagreed with it, and that is this is a strict liability statute. If it turns out that the implied factual representation or, indeed, the expressed factual representation, that is, that the building will hold up, turns out to be wrong, and the building will fall down, even though they did their very best to figure it out, this is the hard case. And that is, they tried really hard to figure out about the building. They had a structural engineer take a look at it. On our broader reading of the statute, Section 11 changes and assigns the risk of error to them. So I don't see that. Sotomayor, that doesn't make much sense to me. A statement is made truly or falsely at the time it's made. Yes. So how can you rely on evidence of what happened later? We would never have closure on a securities action if we would rely solely on the fact that the building fell down 10 years hence. Fair enough. And that is that Justice Breyer's hypothetical happened to be about what would happen in the future, and that would indicate a forward-looking statute. Well, but should I give you a hypothetical that I think will avoid your problem but still raises the hard case for us, and that is, we have a million dollars in inventory today on the day of the registration statement. So the following — in our view, we have a million dollars in inventory. It's an opinion. It's describing what happens today. We know under Section 11, which talks about the date the registration statement becomes effective, that if the warehouse burns down a week later, they're not responsible. But what about the case in which the day before the registration statement is issued, the warehouse burned down, and they had no way of knowing it? It was in rural India. Their very best efforts wouldn't have disclosed it. Under Section 11, they're responsible. What Section 11 does — Breyer, I don't see how that could be. They said, in our opinion, we have X amount of inventory, and you're starting out by saying, well, it is an opinion, but an opinion carries the implication that they would have some basis for it. And they did have a basis for it. In fact, they had a reasonable basis. So how — how there can the plaintiff recover? This is a problem that the common law confronted, and it's addressed in the Restatement First of Contracts and of Torts, in 474 of the Restatement of Contracts and in 542 of the Restatement of Torts. And it says, if you get an opinion, if you are an expert archaeologist or if an art appraiser says, this is a Picasso, you are allowed to rely on the truth of the assertion. The reason they say, in our opinion, is not to express doubt. If you go back and look at the transcript today, Mr. Nusheng, again, will have said we believe, we think, or in our view 20 times in the first 20 minutes of this oral argument. He wasn't intending to express doubt. He was trying to say, look, I have looked at this problem. Here is our view of the situation as people who are specially involved. Sometimes opinions are intended to evoke certainty, not uncertainty. Breyer, I give you those times. What about the other times? Okay. And that's, I think, the point. And that is, you have to decide which of those things is present in a registration statement. And our view is that in a registration statement, you are dealing with a circumstance because it's strict liability. It shifts the risk of error to the issuer because they are collecting the money for when they get the stuff. Ginsburg, you are saying, can I just clarify what seems to be your point? You do not take the reasonable factual basis. You are saying it's the same thing as if we excise, we believe. You take that out, and then you have a statement of fact which is false, and then they are responsible. So you are really saying there is no such thing as an opinion versus a fact. That it's just the same as if they left out, we believe. Two things. The first is, we do believe in the reasonable basis standard. That is, the government has a more modest, what you could call a middle ground. We endorse it. We have a more expansive reading of the statute as well. So that's point one. Point two is, we do think absolutely that you can have an opinion in a registration statement that makes clear it is not something on which you should rely on for the ultimate truth. And you could look at some of the statements that are in the statute. But that's not exactly what you have here, because if you look at these registration statements, you know, we have been looking at one or two sentences in a vacuum. But in fact, if you look at the registration statements themselves, they are sort of surrounded by reasons to discount the opinion. It says, you know, CMS, the government, might think differently, and if that's so, we are really in bad shape. It says these laws may be interpreted in the future in a manner inconsistent with our interpretation. I mean, it seems to me that they actually did a pretty good job of saying, look, we think this, but there are some problems with this, and it could go the other way. I think this is a really important point. I think the critical thing is to realize that Mr. Chamigan doesn't. His view is, even if there are no qualifications whatsoever, it is only telling you what is in his client's head. So that's point one. And they did not make this argument in the district court or the court of appeals here, that you have to look at the full context of the opinion and see whether the party is actually fully hedging. Now, point two is that there are statements that we are relying on in our complaint that aren't like that. If I could take you to the Joint Appendix to give you one good example, and I'll take you to page 192. And this is our allegation about therapeutic interchange. We allege, and they settled a bunch of cases, including with the government, over whether they were switching their patient's drugs in order to have an arrangement that was more profitable to them, but not good for the patient. And we allege that therapeutic interchange, as implemented by them, was illegal. Here is what they said at the top of 192. When required and or specifically requested by the physician or patient, branded drugs are dispensed and generic drugs are substituted in accordance with applicable State and Federal laws as requested by the physician or resident. So this is an instance in the registration statement where they didn't have any of that hedging. They simply said we are acting legally. And our point is that either of two things is implied by that. One is that it's legal, or at least that no person or that a person would reasonably conclude that it's legal. What we want to do on remand is the following. We want to show the actual facts, and we want to show that a person would not reasonably conclude this activity was legal, to the extent they have hedged in the registration statement and said, look, here's a vague law. And we know there are vague laws out there. We know there are vague regulations. And if the registration statement is read to say, look, you could read it as A, as B, or C, then we're going to have to prove that the facts are inconsistent with A, B, or C. That is to say, on the government's intermediate view, that the actual facts don't comport with a reasonable reading of the statutes and regulations that are involved. Remember that it is very hard to understand why Congress would have written a statute that says you're going to be strictly liable for misrepresentations, and we're going to ignore the fact that the reason you state opinions in a registration statement is precisely so that people will rely on them. The whole point of having these in the registration statement is to persuade people about the state of the company, about the state of what it's doing, about its profitability and the like. And if you announce a legal rule that says we're going to — as long as you put the words we believe in front of any of those sentences, then what you're going to have is a situation in which every single time when Congress is trying to make sure that the company speaks truthfully, the plaintiff is going to be held to the burden of proving what's inside people's heads. And I don't think that that is what you would naturally infer from a statute like this. Kagan Could I just make sure I understand, Mr. Goldstein, the basis of your argument in the text is not the untrue statement of material facts language, right, because I would take it that you agree with the government and with Mr. Shanmugam that as to that, the only untrue statement in an opinion is whether you hold it. But the basis of your view, both as to agreeing with the government and also suggesting that — a further view, is the omissions language, is that right? Goldstein That is not quite correct. I think that it's a very subtle difference to say, is what we're holding them liable for the implied statement, which was untrue, or the omission of the fact that makes it non-misleading. I'll tell you — let me give you what Virginia Bankshare said about this. It spoke, and this is in the context of Rule 14a9, which uses the same language as Section 11, and this is on page 1092. Such statements are factual in two sentences, as statements that the directors do act for the reasons given or hold the belief stated, and as statements about the subject matter of the reason or belief expressed. And in that example, the Court understood the statement, we, you know, we recommend this merger because $42 is a high price, to be an implied statement about the nature of the price and whether it was high or fair. I don't think much matters in the characterization of whether it's an implied statement or instead the failure to include a fact that would make it true, but that's how Virginia Bankshare put it. Sotomayor Well, there, in that case of Virginia Banks, it was a given, it was stipulated or proven already by the jury verdict that they didn't believe what they said. And I think that's a really important thing about Virginia Bankshare's. I think the most that my friend can try and derive from Virginia Bankshare's is that under Section 14a9, the Court said you can hold someone liable if you have both subjective and objective disbelief. What they're trying to do is to say that that is not just sufficient but necessary, and that is that you — Virginia Bankshare stands for the proposition that you have to prove subjective disbelief. And let me just point you to the language of the Court's opinion that I think is completely inconsistent with that. There are — this is going to be on page 1095 of the Court's opinion. The first sentence is going to be from precisely before what Mr. Shammigan read. It says that under Section 14a, then, a plaintiff is permitted to prove a specific statement of reason, knowingly false or misleadingly incomplete, even when stated in conclusory terms. And that is referring to the following statement, that however conclusory the director's statements may have been, then it was open to attack by garden-variety evidence allowing Respondents the opportunity for recovery on the allegation that it was misleading to call $42 high. And the Court said you could recover just on that allegation. And remember how anomalous it would be to say that Virginia Bankshare holds that you must prove the state of mind of the speaker. This is a strict liability statute. To say you have to prove that the person didn't believe the implied fact is to say it's not a strict liability statute. It's essentially scienter. And why is it, we would ask, that Congress would say we recognize an implied statement of reason in the opinion, but we're going to require that you prove that they essentially intentionally lied to you. It's just contrary to the entire structure and notion of Section 11, which isn't a fraud statute at all. It is derived from principles of common law that said if you have an even negligent misrepresentation, even an innocent misrepresentation, you just state the facts wrong, then what you have is effectively rescission. And that is the issuer got the money from the person who bought the stock. There was a mistake. It went wrong. We're not saying that they're intentional liars, but they got the money on the basis of an incorrect representation. They get the money back. And you can't say that you have a state of mind requirement when the statute simultaneously says for auditors, for the lawyer who has to produce a legal opinion with respect to forward-looking statements, then you inquire whether, and it's going to be on the defendant, to prove that they engaged in due diligence. Alitoso, if it's not purely subjective, if it's the reasonable basis test, what does that mean? And Mr. Schamlingen says that's very open-ended, and I think he has a point. I don't really know what a reasonable basis would be in that situation. Well, this is something that the common law has employed and utilized for well over a hundred years. In this case, we would be required to prove, with respect to the hedged legal statements, that a reasonable or that the legal view of the company is consistent with the facts, and that is you couldn't reasonably hold this legal view if you were taking kickbacks and you weren't passing the money on to the government. There was no question. Alitoso, to what degree must the person, let's just take the CEO who signs on behalf of the corporation, to what degree must he conduct an investigation to determine whether illegality is going on someplace in the company? If you are making, if you go out of your way to say what we're doing is legal, then you are going to have to undertake a reasonable investigation. I'm not, let me just say to you. What does that mean? I believe it's, I believe, the CEO says, I believe that nobody in this company is paying bribes. Yes. And the CEO has no information, it's a true statement of belief, and he's received information from certain corporate compliance officers that no bribes are being paid. Yes. How much investigation does he have to go on? Does he have to do, does he have to hire an outside firm to do an investigation to see if it may be somebody is paying bribes? It depends on whether he has information. The most specific thing that I can help you with your opinion in the case is that, remember, this due diligence standard exists in the statute. Any expert that offers an opinion is going to have to show a reasonable investigation. Congress didn't write more into the statute for the defense because it's very contextual. If the CEO knew that there had been claims in the press, for example, there had been allegations, they were facing a key TAM lawsuit, then there would be a heightened obligation to investigate. My point for you is that Mr. Shanmugam thinks none of that's relevant. And that is the case. I understand that. He says it's purely subjective. You say, basically, it's the state of mind is completely irrelevant. But if we're in the middle someplace. Right. And the middle ground is that when he makes that statement in the registration statement, he is trying to induce me to believe, at the very least, I wouldn't say this if I didn't have a reasonable basis. We then will have to prove, as the plaintiffs, that there was not a reasonable set of facts that could lead them to say this. In his view, even if it was completely unreasonable, that is to say, the CEO heard these rumors and thought that. You're not really helping me, but maybe all you're saying is reasonable, reasonable, reasonable. I would like some more concrete guidance as to what is reasonable. I'm sorry. It's just very context-dependent. In your hypothetical, what I would say is that if the CEO knows that there's never been an allegation about this, his general counsel has said, we are complying with the law. I don't think the CEO is going to have to do more. But, in fact, if the contracts by their terms, which is what we allege, involve direct payments for increasing market share, if they are paying — here's another good example. We have in the complaint that their own lawyers told them not to make these purchases with respect to nursing homes because it would amount to an illegal kickback. Roberts, that's your case, but I gather your answer, Justice Alito, is that if the CEO doesn't know about anything and his lawyer comes in and says, no, I don't know about anything, then that cannot be the basis for a suit? In your hypothetical, in which there is no question about the reasonableness, I think that they will have an explanation. No, no, no. I'm asking you, is it reasonable for him to say, I don't know anything about any bribes? The lawyer comes in, do you know anything about it? No, I don't know anything about any bribes. Is it reasonable for him to say, in our opinion, our employees are not giving bribes? If that is true across the company, because it's not just the CEO that signs the registration statement, then yes. Thank you. Ms. Zaharsky.  The parties have offered you two extreme positions, and we think that the answer lies in the middle. And this is an answer that comes right from the language of the statute, because it's not the case, as Petitioners suggest, that the statute only requires that you make statements that are literally accurate. The statute says that you have to make statements that are both literally accurate and not misleading as to that there cannot be a material omission. And this is a — this is really a standard that makes sense in the context of this particular case where we're talking about whether something in a registration statement has a reasonable basis. And I want to clarify what we mean by reasonable basis. We mean a basis that would be expected under the circumstances, that a lack of a reasonable basis is what makes an omitted fact make the statement about the opinion misleading. So to answer Justice Alito's question, a plaintiff has the burden to come into court and provide an omitted fact that should have been put in the statement of opinion or provided along with it in order to make it not misleading. Kennedy, it seems to me that you're not in the middle, that you're almost 90 percent with the Respondent, because you give very little weight to the subjective belief component. We think that you could establish liability either way. It's really the court of appeals kind of addressed two questions, and we agree with the court of appeals halfway. The first question is, do you always have to have subjective disbelief to recover under Section 11 for an opinion? The court of appeals correctly said the answer to that was no. But then to you, I'm, I'm, are you disavowing Virginia Bankers? Virginia Bankers says you need two things. You need subjective disbelief and or not quite, but you need an objective fact that's not true, meaning you need to prove the falsity of the objective fact. Well, with respect, we don't think that the court in Virginia Bankshares held that both were required because if you picked up before the jury. No, you're right. It only held that the second was required. So you always have to prove that. So what mental state are you saying has to be proven? Either they didn't believe what they were saying and there was no reasonable or there was no reasonable basis for what they were saying? That's right. Either they didn't believe what they were saying or there was no reasonable basis for what they were saying. And how do we get. Alito, you were asking Justice Kennedy, you said it was right and wrong, and then you got the part out about it being right. What, what way was it wrong? The way in which the Sixth Circuit decision was wrong is because it suggested this idea of liability by hindsight, that if there's something that you give an opinion on about legality and it's later proven or later established to be false by a, untrue by a court, that you could be found liable by hindsight. And we think that that's not true. What matters is the state of mind and the basis that you had at the time the registration statements were made. And that's actually directly in the language of the text of the statute, which focuses on when the registration statement became effective. But just to make clear, and again in response to Justice Alito's question, this is a context-specific inquiry and the burden is on the plaintiff to come forward with an omitted material fact that should have been stated. And in the context of an opinion, the kinds of things that would be omitted material facts that would matter are things that undercut a basis that you would expect. So it could be a lack of any investigation whatsoever, but it could be, as Justice Kagan said, that you've been sued and several courts have held against you. Those are the kinds of facts. Alito, this is always going to come up after it's been shown that the statement turned out to be the statement of belief turned out to be incorrect. The registration statement says we believe X. It turns out X is not true. So it's not going to be very hard in that situation for a plaintiff to allege that the issuer did not make a reasonable investigation, because if they had done a reasonable investigation, they would have discovered that X wasn't true. Well, with respect, I'm not sure that that's true because of the stringent pleading standards that are in place. First of all, it's not just that they could allege a conclusion under this Court's decision in Twombly and Iqbal. It's that you have to have facts to support it. Also, there are some courts, like the Court in this case, depending on the allegations that say they need to meet the particularity standard for fraud, claims that sounded fraud under Section 9b. So there is, in fact, a burden on the plaintiffs. And one point that I want to make is that this is the kind of inquiry that comes up in omissions cases all the time. The question is the plaintiff says and has to say with facts behind it, there's something that was omitted that matters. And the question ultimately for the finder of fact to decide is did it make the statement misleading or not. And that is a very context-specific discussion. Well, they say, someone pleads that they said we believe there were no bribes paid, and then later it's discovered that lots of bribes were being paid off someplace. So they allege all the things that have turned out to be inconsistent with the statement of belief, and they say had they sent someone there to investigate, they would have found this, they would have found that. So how difficult is that going to be? Again, I think it depends on the case. You know, one thing that I would suggest to the Court by way of reassurance is both that the Court has addressed a number of omissions cases in asking, you know, is the kind of information something that should have been included to make the statement not misleading, but also that the standard that we're talking about, the lack of a basis, has deep roots in the common law. It's been the longstanding position of the SEC, and there are numerous courts that have used this standard, including the Third Circuit's decision in the Trump case, the White's case that's cited in our brief. Sotomayor Do you think that there are specific omissions in this case? Well, the case wasn't really pleaded the way that we conceive of it in terms of the lack of a reasonable basis. So we do think the appropriate thing for the Court to do would be to provide appropriate instructions to the lower courts, send this case back, and potentially allow this case to be repleted, because of the fact that we do think there was a kernel of this lack of a reasonable basis idea in two places in the complaint in this case. The one is the relatively conclusory statement in Section 183 of the complaint that there was not a reasonable basis, but then there was also, as Mr. Goldstein noted, paragraphs 89 and 90 of the complaint, which were specific facts that were alleged about the company's attorney saying with respect to one of the specific contracts, this contract has all the hallmarks of a kickback, an illegal kickback. And that is the kind of thing that potentially is an omission that could be material and could make the other statements in the registration statement misleading if you don't provide such information. Do you think that Twombly in this context requires the plaintiff to allege what kind of investigation was conducted? Before there's discovery? I think that that would be a case-specific determination, but I don't think that under Twombly and Iqbal that the plaintiff could just come in and give a very generic, a very conclusory allegation. That's what the Court said is no conclusory allegations. But another point I think that might be helpful to the Court is that this is really this no reasonable basis standard is really something that polices the egregious cases, because it has to be the case that the plaintiff can come forward with information and that the basis that the company had is really outside the bounds of reasonableness. And we need to have it for egregious cases. For example, if there was a company that really did no investigation before putting statements like financial statements or financial predictions in its mind. Breyer, let me just say, look, the statement turned out to be false. We don't doubt that he did hold that opinion as his opinion. He was sincere, but he had no basis for that whatsoever. Period. That's what the complaint says. Now, how can you avoid discovery on that? Well, I think the plaintiff has the burden to allege specific omitted facts that should have been given in the registration. He never looked into it. He had no basis for it. That's trying to prove a negative. What are they supposed to allege a negative? He didn't go to the law books, didn't go to the library, didn't talk to this, didn't talk to that. I mean, it's pretty hard to do, isn't it? Well, I think it depends in the context of the entire complaint whether there's sufficient factual matter there or not. But, again, what I would tell the Court is that this kind of issue, not with respect to opinion specifically, but in general, arises in omissions cases, and there are many omissions cases under Section 11, which is not surprising when you think about it, because these registration statements are so carefully vetted, it's not often the case that you find facts that are stated that are actually untrue. And that's really the key point that I want to make when you're thinking about Petitioner's statement, is the SEC does really view this as a problem, to say that the Petitioner's idea that you can just put we believe in front of something and then not have any need to make an investigation into it or see whether it has a basis. Why can't that be submitted to the jury? In other words, you can look not to see if, in fact, it has a reasonable basis, but to use the evidence about how unreasonable the basis must be to suggest that  Well, Congress may be able to say that the Petitioner's idea was not sincere. If someone comes in, Justice Breyer's hypothetical, has no basis at all, and says I believe that this, and the evidence shows he had no basis at all, the jury can easily determine, like, well, we don't think you really believed it. You're right that that's probative evidence, but I think the key point is the language Congress enacted, that Congress did not limit liability to statements that are literally true or false. There could be statements that are literally true, like he had the belief, but were misleading. And I think that that's the situation. There are places where you could have something that is subjectively believed. A company in litigation and the company lawyer thinks we're going to win this, we can, but they haven't been winning it, and they don't disclose the fact that there are some serious risks there. And that's the kind of thing that really shouldn't be put in registration statements without fault. Kagan, does this affect not only the private right of action? I was uncertain whether it also affected the SEC's ability to stop a registration statement which it thought had a misleading statement of opinion. If we come out the way Mr. Shanmugam says, is the SEC's ability to do that severely compromised? Yes. The language, the operative language is nearly identical. This is between section 8, which is about the SEC's stop orders, and section 11. And the key language is that there has to be the misstatement of material fact or the omission that makes the – because the omission is present, makes the statement not misleading. So this is nearly identical language, and the SEC has taken the position for many years that in fact a lack of a reasonable basis is a serious problem, even if the person sincerely believes it. Those are the cases cited in our brief, and the reason we're here today is because it will severely hamper the SEC's authority as well as the authority of private persons to recover if you can just put things in registration statements without needing to have a basis for them. Thank you. Thank you, counsel. Mr. Shanmugam, you have 7 minutes remaining. Thank you, Mr. Chief Justice. This is the rare case in which none of the parties is defending the reasoning of the court of appeals below. And just to reiterate, the court of appeals in this case held that the falsity requirement in Section 11 operates differently because Section 11 is a strict liability statute. And that's the reasoning at page 47 of the Joint Appendix. So the real question before this Court is whether to reverse outright, as we submit this Court should do, or to vacate and remand for application of a somewhat different legal standard such as the reasonable basis standard. I want to really set out three reasons in this rebuttal why we believe that the Court should reverse outright. First of all, I want to focus on the text of the statute. And to go to the colloquy, Justice Kagan, that you and I were having, and the similar colloquy that you also had with my colleagues at the bar, whether or not there is a reasonable basis is not a fact that can be said to be omitted. And that is for the precise reason that this test is not simply a some basis standard. This is a reasonable basis standard that requires some evaluation of whether the basis is sufficient. And so that is really a judgment. It is really a matter of opinion. And I don't think that it can fairly be said to be a fact that is omitted. And again, as I suggested earlier ---- Kagan. But there might be omitted facts, such as, I didn't check with any of my lawyers, or I checked with my lawyers and they told me the opposite. I mean, those are facts, and that's the thing that makes the statement in the registration statement itself misleading. And so the only point I would add is a point that I think I made in my opening argument, which is that the statement of material fact here is still the statement of the opinion. And there is nothing misleading about that statement as to that stated fact. That is to say, either that is the opinion of the issuer or it isn't. And I think it was telling that Mr. Goldstein in his argument ---- Kagan. But I think what Ms. Sahorsky is saying, maybe not Mr. Goldstein, is that there's another part of the statute which is omissions, and that those omissions of facts, I didn't check with anybody, or I checked with everybody and they said the exact opposite, that's the thing that makes my own statement misleading, and that's why it fits within the statute. Right. But it still has to be an omission that is, in the words of the statute, necessary to make the statements therein not misleading. And again, we think that the statements therein are really the statements of material fact. Now, Mr. Goldstein made a somewhat different textual argument, and I want to address that, too, just to kind of lay all of our cards on the table. He argued that in essence, because this concept of due diligence, this concept of having a reasonable belief, exists in the affirmative defense, that this Court can somehow just import that concept into the affirmative falsity requirement. And to me, that really illustrates why this is a profoundly atextual view, because in essence what he is saying is that although Congress incorporated a reasonableness standard in certain specific contexts with regard to defenses for persons other than the issuer, you should impose it as an affirmative requirement with regard to statements of opinion, whoever the speaker is. And again, we simply don't think that can be squared with the text of the statute. I would note a couple of further things in response to Ms. Saharsky's argument as to the text here. First of all, as I said in my opening, if Congress wanted to specifically impose liability in the absence of a reasonable basis, it certainly could have done so. There are statutes outside the securities context that use that phrase in order to impose liability. But second, to the extent that the SEC views this as a massive problem, the SEC certainly could promulgate a rule under its authority under Section 19 of the Securities Act, which allows the SEC to specify what should be included in a registration statement. And the SEC, in fact, has somewhat broader power than Ms. Saharsky suggests, because while it is true that the SEC's stop order power under Section 8D uses similar language, the SEC also has the power to prevent a registration statement from going into effect under Section 8B where that statement is inaccurate or incomplete in any respect. In our view, that is broader language that would give the SEC somewhat more expansive authority if it believed that a statement of opinion is objectively false. With regard to Virginia bank shares, I would just note one thing in response to Justice Sotomayor's question, and that is that as we point out at page 10 of our reply brief, there was no jury finding in Virginia bank shares on the issue of subjective disbelief. This Court was instead characterizing the jury's finding precisely because this Court believed that what it meant for a statement of this variety to be false was for the speaker to have acted with subjective disbelief. And again, I would point the Court to what we said in our reply brief. We cite the verdict form as confirmation of that proposition. Third, I want to say just a word about the policy considerations here, pro and con a reasonable basis standard. As I pointed out earlier, we believe that that standard is amorphous, and I don't think that anything that's taken place in the intervening half an hour has dispelled that proposition. Ms. Saharsky says that whether or not a basis is reasonable is whether or not the basis is one that would be expected under the circumstances. And I would respectfully submit that that really doesn't provide much more by way of clarity, and it certainly would make it very easy for a plaintiff to complete a claim under this legal standard because all they would presumably have to say is that the basis is not that that was expected under the circumstances. And as Mr. Goldstein said, this inquiry would be very context-specific. And again, in a context where issuers really require predictability and certainty, we believe that that is cold comfort. There's one other policy consideration, however, which I didn't mention earlier that I just want to mention very briefly. There are very few statements of opinion that are required to be included in registration statements. There is the statement of the auditor, the statement of the lawyer that the issuance of these securities is valid. But beyond that, the statute and the regulations really do not require very many of these statements. And we therefore believe that a standard, an amorphous liability standard like the reasonable basis standard, will really have a chilling effect in cases of this variety. And I would note, as was illustrated in the discussion with Mr. Goldstein, that in this case, most of the statements at issue were accompanied by cautionary language. And I think that the reason why that is so is that the reason why companies like Omnicare make disclosures like this is precisely to warn about the risks of doing business. If you take a look at the book. Kennedy, what would be your position if those qualifying statements that do appear just before and just after this belief statement were omitted? Well, our view would be the same in the sense that we certainly think that subjective disbelief would still be required. And of course, we believe that that is the holding of this Court's decision in Virginia Bank Shares as it has been understood. But I make the point for a somewhat different reason, which is simply to illustrate why issuers believe that it is desirable to make statements of this variety. And if issuers are subject to liability under an amorphous standard, they will simply omit to do so. Thank you. Thank you, counsel. The case is submitted.